Filed 7/16/25  P. v. Turner CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEMAREALE TURNER,<br><br>        Defendant and Appellant. | A168908<br><br>(Contra Costa County<br>Super. Ct. No. 05009611955) |

In 1997, a jury found defendant Demareale Turner guilty of first-degree murder and found true allegations that he personally used a firearm and committed the murder for the benefit of a criminal street gang.  In 2022, defendant petitioned for resentencing under Penal Code section 1172.6, but the trial court determined defendant failed to demonstrate a prima facie showing of entitlement to relief.  On appeal, defendant contends the court erred in summarily denying his petition because the jury instructions, which referred to various uncharged crimes other than murder, did not preclude as a matter of law that the jury may have convicted him of murder without a finding of malice.  We reject this contention and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We provide the following factual summary solely for background purposes and context for the parties' arguments.  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2, disapproved on other grounds in *People v. Patton*

1

(2025) 17 Cal.5th 549, 569, fn. 12.) We also rely on the procedural history of the case as recited in the unpublished opinion affirming defendant's conviction (*People v. Turner* (Jul. 20, 1999, A078786) [nonpub. opn.].) (Pen. Code, § 1172.6, subd. (d)(3).[1])

## A. Underlying Offense and Conviction

Defendant and Gerald Robinson were members of the Project Trojans gang operating in North Richmond and San Pablo. In October 1995, Robinson was arrested and jailed for assaulting his girlfriend after seeing her in a car with victim Christopher Miles. The following month, Miles was approached on the street by three men and shot several times. While hospitalized, Miles told a physician and a police officer the shooter was a person named Johnnie. Miles also identified defendant in a photographic lineup and claimed he was the second person to fire at him. A witness to the crime selected Johnnie Simon's photograph as the first person to shoot Miles, but he would later disavow this identification. Miles died of complications from his gunshot wounds.

The police sought defendant and Simon for the shootings and soon apprehended defendant. The police also recovered a firearm used in the shooting. Defendant's sister ("E.T.") purchased the gun in September 1995, and defendant's brother had hidden the weapon in his bedroom. Sometime in September 1995, defendant went into the brother's room and left with a bulge under his jacket.

In 1996, Simon called E.T. and asked whether "Lisa" (defendant's other sister and Simon's stepmother) had gotten rid of the gun. Simon was eventually apprehended in New Mexico, and he admitted being a member of the Project Trojans.

---

[1] Further unspecified statutory references are to the Penal Code.

Defendant, along with Simon and Demetrius Antoine Thompson, were jointly charged by information with murder (§ 187). The information further alleged that defendant personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)) and committed the offense with the specific intent to benefit, promote, further, or assist the unlawful conduct of a criminal street gang (§ 186.22, subd. (b)(1)).

Defendant was tried alone. Street gang experts testified that members of Project Trojans would assault a man for dating a member's girlfriend, and that the Project Trojans controlled sales of drugs in North Richmond. The prosecution presented evidence that defendant, Simon, and other Project Trojan members sold or possessed drugs in North Richmond on six separate occasions, and that in January 1992, defendant threw a bottle at a police car. Defendant testified and presented witnesses claiming he was with friends on the day of Miles's shooting.

The jury found defendant guilty of first-degree murder and found true allegations that he personally used a firearm and committed the murder for the benefit of a criminal street gang. Defendant received a prison term of 31 years to life. He appealed, and in 1999, this court affirmed defendant's conviction but modified the sentence to strike the two-year gang enhancement and instead impose a minimum parole eligibility date of 15 years. (*People v. Turner* (Jul. 20, 1999, A078786) [nonpub. opn.].)

**B. Petition for Resentencing**

In March 2022, defendant filed a pro per petition for resentencing under section 1172.6. On the form petition, defendant checked boxes alleging that he had been charged with murder under the felony murder rule, the natural and probable consequences doctrine, or another theory under which malice was imputed to him based solely on his participation in a crime, and

3

that he could not presently be convicted of murder because of changes to sections 188 and 189. The trial court appointed counsel for defendant, and the parties briefed the matter. After a prima facie hearing in August 2023, the trial court took the matter under submission.

In its written order denying the petition, the trial court first noted it had not considered the factual recitation in the unpublished appellate opinion or defendant's alleged statements in a Comprehensive Risk Assessment prepared for his parole hearing. The court then turned to the jury instructions given in this case and observed that the jurors were not instructed on the felony murder rule or the natural and probable consequences doctrine; that the instructions for first degree murder expressly indicated a guilty verdict required a finding that defendant harbored malice aforethought; and that no other theory of first degree murder was presented to the jury. Concluding defendant had been convicted of murder on a valid theory upon a finding of actual malice, the court found him ineligible for resentencing relief as a matter of law. This appeal followed.

DISCUSSION

A. Section 1172.6

Prior to the effective date of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015), malice could be imputed to a person under two theories: (1) the felony murder rule, and (2) the natural and probable consequences doctrine. Under the felony murder rule, a defendant could be liable for first or second degree murder if the defendant or an accomplice killed someone during the commission or attempted commission of an inherently dangerous felony. (*People v. Powell* (2018) 5 Cal.5th 921, 942.) And under the natural and probable consequences doctrine, an aider and abettor could be found "guilty not only of the intended, or target, crime but

4

also of any other crime a principal in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime." (*People v. Smith* (2014) 60 Cal.4th 603, 611.)

In 2018, the Legislature enacted Senate Bill No. 1437, which amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting, and limit[] the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Senate Bill No. 1437 also added former section 1170.95, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, at p.957.)

The resentencing procedures originally applied only to "[a] person convicted of felony murder or murder under a natural and probable consequences theory." (Former § 1170.95, subd. (a) (Stats. 2018, ch. 1015, § 4).) Effective January 1, 2022, section 1170.95 was amended to extend the resentencing procedures to a person convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551, § 2.) Former section 1170.95 has since been renumbered as section 1172.6, with no substantive changes. (Stats. 2022, ch. 58, § 10.)

If a section 1172.6 petition contains all required information (e.g., declaration of eligibility, case information, any request for appointed counsel), the trial court "must 'review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of [section 1172.6].' [Citation.] If the petitioner has made this initial prima facie showing, he or she is entitled to appointed counsel, if requested, and the prosecutor must file a response, and the petitioner may file a reply. [Citation.] The court then reviews the petition a second time. If

5

it concludes in light of this briefing that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and recall the sentence and resentence the petitioner on any remaining counts." (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1003 (*Roldan*).)

In determining whether a petitioner has made a prima facie case for relief under section 1172.6, "a trial court may look to the record of conviction and the court file." (*Roldan, supra*, 56 Cal.App.5th at p. 1003.) The record of conviction generally includes the charging documents, the plea form or verdict forms, the jury instructions, and closing arguments. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1247, fn. 3; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170 (*Flores*).) Such record "will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.)

At the prima facie stage, the trial court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) A petitioner is not eligible for relief when the

contents of the record demonstrate, as a matter of law, that a prima facie showing has not been made. (*Roldan, supra,* 56 Cal.App.5th at p. 1003.)

Whether a petitioner has made a prima facie case for relief is a question of law, which is reviewed de novo. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

**B. Analysis**

Defendant concedes that during his criminal trial, the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine. He further acknowledges the jury "heard the crime of murder correctly defined," including "a proper definition of first degree murder based on premeditation and deliberation." He nevertheless contends the " 'collective effect' " of other "generic, imprecise, and overlapping instructions" was to enable the jury to convict him of murder without finding that he harbored malice, and thus, the instructions did not preclude his eligibility to resentencing relief as a matter of law.

Specifically, defendant highlights CALJIC 3.00, which told the jury that the "principals" equally guilty for "the crime" include direct perpetrators and those who aid and abet the commission of "the crime," while CALJIC 3.01 instructed that in order to convict defendant of aiding and abetting, the jury had to find that he aided, promoted, encouraged, or instigated the commission of "the crime" with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating the commission of "the crime." Defendant emphasizes that these instructions generally referred to "the crime" without mentioning murder.

Defendant then points to other instructions that referred to various uncharged offenses. For instance, the instructions on general intent (CALJIC 3.30), specific intent (CALJIC 3.31), and concurrence of acts and mental

7

states (CALJIC 3.31.5) included references to multiple offenses other than murder (e.g., "the predicate crime[s] of possession of a concealable firearm on the person by a minor[,] sale of a controlled substance[,] or assault with a deadly or dangerous weapon"; "the predicate crime of possession of a controlled substance for sale"; "the predicate crimes of sale of a controlled substance, possession of a controlled substance for sale and possession by a minor of a firearm capable of being concealed on the person"). Similarly, as part of the gang enhancement instruction, the jury heard references to multiple uncharged offenses including "assault with [a] deadly weapon or by means likely to produce great bodily injury, as defined in Penal Code Section 245"; "sale of controlled substances as defined in . . . Health and Safety Code section 11352"; "possession for sale of controlled substance, as defined in Health and Safety [Code] section 11351.5"; and "possession of a firearm capable of being concealed on the person by a person under 18 years old, as defined in Penal Code section 12101." Additionally, specific instructions defined felony assault, simple assault, sale of a controlled substance, possession for sale of a controlled substance, and unlawful possession of a concealable firearm by a minor.

From this, defendant argues it cannot be ruled out as a matter of law that his conviction rested on a theory by which malice was imputed to him based solely on his participation in the uncharged crimes. He posits that without examining the trial evidence,[2] one can only speculate as to whether

---

[2] Here, defendant emphasizes that factual recitations in a prior appellate opinion cannot be considered for purposes of evaluating his eligibility for relief. A number of appellate courts have concluded that because section 1172.6, subdivision (d)(3) permits courts to consider specifically the "procedural history of the case recited in any prior appellate opinion," the Legislature intended to prohibit consideration of the factual recitations of that opinion. (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238;

the referenced drug sale or firearm possession offenses "might have been viewed by the jury as 'the crime' as that term is used in CALJIC 3.01."

As mentioned, jury instructions are part of the record of conviction that a court examines in determining whether a petitioner has satisfied the conditions for relief under section 1176.2. (*Flores, supra*, 96 Cal.App.5th at p. 1170.) In general, "[c]hallenges to the wording of jury instructions are resolved by determining whether there is a reasonable likelihood that the jury misapplied or misconstrued the instruction." (*People v. Crew* (2003) 31 Cal.4th 822, 848.) "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Young* (2005) 34 Cal.4th 1149, 1202, internal quotation marks omitted.) " ' "It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions." ' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 905.)

Defendant contends the above instructional error principles do not apply here because he "does not allege 'error' in the instructions." He is mistaken. The appellate courts of this state have consistently applied these principles in evaluating whether jury instructions established or precluded a prima face case for resentencing relief. (See, e.g., *People v. Love* (2025) 107 Cal.App.5th 1280, 1290; *People v. Carr* (2023) 90 Cal.App.5th 136, 146 (*Carr*);

---

*People v. Vance* (2023) 94 Cal.App.5th 706, 713; *People v. Clements* (2022) 75 Cal.App.5th 276, 292;) As mentioned, however, our factual summary above is intended solely to provide background and context. Neither we nor the trial court considered the prior appellate opinion's factual recitations in deciding whether defendant made a prima facie showing of eligibility for resentencing relief.

*People v. Williams* (2022) 86 Cal.App.5th 1244, 1256; *People v. Estrada* (2022) 77 Cal.App.5th 941, 948.)

Viewing the jury instructions in their entirety, and presuming the jury understood and applied them according to their terms, we conclude defendant fails to demonstrate that the jury was permitted to convict him of murder based on his participation in the uncharged crimes and without a finding of malice. We reiterate that the trial court never instructed the jury on felony murder, the natural and probable consequences doctrine, or any other theory by which malice could be imputed to defendant based on his participation in another crime. To the contrary, the jury was expressly instructed that murder requires malice aforethought and that malice could be express or implied, both of which remain valid theories of liability for murder after Senate Bill No. 1437. (See § 188, subds. (a), (b); *Carr, supra,* 90 Cal.App.5th at p. 144.) The jury was also instructed on the willful, deliberate and premeditated state of mind required for first degree murder. As such, the jurors knew that in order to convict defendant of first-degree murder—which they did—they had to find that he acted willfully and with the intent to kill.

We see no reasonable likelihood the jury misapplied these instructions in the manner urged by defendant simply because the instructions included references to uncharged offenses. As the record of conviction confirms, the jury knew that defendant was charged with one count of murder, and it received clear and unambiguous instructions regarding the mental state required for that crime. Though instructions for general intent, specific intent, and mental states were also given with reference to uncharged crimes, the instructions as a whole made sufficiently clear that the evidence of uncharged crimes was being offered for specifically stated purposes that did not pertain to the murder charge. Importantly, the trial court instructed that

10

certain "evidence was admitted for a limited purpose" and that it could "not consider such evidence for any purpose except the limited purpose for which it was admitted." For instance, the jury was told that "[e]vidence has been introduced for the purpose of showing that a witness, [t]he defendant, engaged in past criminal conduct amounting to a crime or crimes[.] This evidence may be considered by you only for the purpose of determining the believability of that witness. . . . [¶] The prior crimes alleged are: [a]ssault with a deadly or dangerous weapon and sale of a controlled substance." We assume the jury adhered to the instruction limiting the purposes for which the evidence of uncharged crimes could be considered.

Likewise, the gang enhancement instruction made clear the distinction between the charged and the uncharged offenses, the latter of which had a specific purpose delineated in the instruction. The jury was told that "if you find the defendant guilty of the crime of murder as charged in count one or a lesser felony," the jury "must further determine whether said crime was committed by the defendant for the benefit of, at the direction of, or in association with a criminal street gang." The jury was then instructed that in order to find that a gang was a "criminal street gang," the jury had to find that its members engaged in "a pattern of criminal activity," and that the crimes of assault with a deadly weapon or by means likely to produce great bodily injury, possession for sale and sale of controlled substances, and possession of a concealed firearm by a minor could be used to establish the "pattern of criminal gang activity." The verdict form reinforced this distinction by providing a separate space for the jury to mark whether it found defendant guilty of either first or second degree murder, and then setting forth a separate section listing the uncharged crimes as the "act or acts you unanimously found as a primary activity of the gang."

11

In sum, the instructions and verdict forms made clear that the references to and evidence of the other crimes were for the limited purposes stated in the instructions, including whether a pattern of criminal activity had been established for the criminal street gang finding. (E.g., CALJIC 2.23.1, 3.30, 3.31, 3.31.5.) On this record, we will not assume that the jury disregarded the relevant instructions or that it concluded the evidence of uncharged offenses could be used for the uninstructed purpose of convicting him of murder under an imputed malice theory.

Defendant's reliance on *People v. DeHuff* (2021) 63 Cal.App.5th 428 is unavailing. In *DeHuff*, the jury was instructed on two murder theories—"one valid (implied malice murder), and one invalid (second degree felony murder)" arising out of the defendant's act of reckless driving to evade a police officer (Veh. Code, § 2800.2). (*DeHuff*, at p. 437.) The *DeHuff* court held that because "there is no way to ascertain from the record upon which theory the jury based its finding of guilt," and the defendant could not be convicted of second degree felony murder based on a violation of Vehicle Code section 2800.2, the defendant made a prima facie showing of entitlement to relief under the predecessor to section 1172.6. (*Id.*, at p. 442.) Here, in contrast, the jury was not instructed on any invalid theory of murder, and for the reasons discussed, we find no reasonable likelihood that the instructions invited the jury to convict defendant of murder based merely upon evidence of his participation in other crimes like drug sales or firearm possession.

In sum, based on the record of conviction, including the entire set of instructions given to the jury, we conclude the trial court correctly found defendant ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Rodríguez, J.

*People v. Turner* (A168908)

13